ERMA D. BELL et al., Appellants, v. ED. HAM and ED GEORGE, Respondents.

**Springfield Court of Appeals, January 30, 1915.**

1. TAXATION: Failure of Life Tenant to Pay: Not Laches Against Remainderman. Though a life tenant failed to pay the taxes on the land in question for several years, such failure cannot be charged against the remainderman as laches.

2. ————: Suits for Collection of: How Brought: Against Whom. Tax suits should be brought in the name of the State at the relation of the collector and against the owner of the property. (Sec. 9303, R. S. 1899), or against the last record owner (Sec. 11498, R. S. 1909.)

3. REAL ESTATE: Recording Title: Subsequent Good Faith Purchasers. The owner of property having a title deed must put same on record in order to make it valid as against subsequent purchaser in good faith.

4. TAXATION: Tax Sales: Title Acquired. A tax sale under judgment in a tax suit following sec. 9303, R. S. 1899, vests title in an innocent purchaser without notice actual or constructive, of another's claim of title. But this rule does not apply where the title is based on an instrument not necessary to be recorded in local land records.

5. LAND PATENTS: Recording Locally: When Not Necessary. A United States Patent to land is not such an instrument as is required to be recorded in the local land records for any purpose nor is it such an instrument as is void as to subsequent purchasers in good faith unless so recorded.

6. CONVEYANCES: What Must be Recorded. What conveyances must be recorded. (See Sec. 10390, R. S. 1909.)

7. LAND PATENTS: Notice. A patent is notice to the world. The record of it is in the General Land Office.

8. TAXATION: Suit for Collection: Owner: Who is: How Determined. In suing for taxes, a tax collector, when resorting

to the plat book of entries to ascertain the owner, must resort to the plat book of entries obtained from the Land Office by the county court and such plat book must be duly certified by the proper officer and admissible in evidence.

9. **EVIDENCE: Improper Admission: Plat Books.** Where an unverified and unauthenticated plat book was offered in evidence for the purpose of showing the last record owner of the land, the court committed error in receiving same. It was incompetent for any purpose.

10. **LACHES: May Bar Equitable Relief: Not Legal.** The doctrine of laches is only appliacable to defeat a claim for some equitable relief. It is no bar to a claim made under a legal title.

11. **TAXES: Nonpayment by Owner: Does Not Affect Standing in a Suit Against Illegal Claimant.** That the legal owner of certain land had not paid taxes thereon for forty years, is not, without more, a bar to his recovery as against one claiming under an invalid tax sale, the invalidity being occasioned because the tax suit was brought against the wrong party.

Appeal from Butler County Circuit Court.—*Hon. J. P. Foard*, Judge.

REVERSED AND REMANDED.

*J. W. Chilton* and *Sheppard & Green* for appellants.

(1) The will of William B. Dorn having vested a life estate in Mattie G. Dorn, his widow (now Mattie G. Felton by marriage), and the appellants being remaindermen, were under no obligation to pay taxes on the lands in controversy, until the determination of the said life estate, and had no right of possession of said lands in the meantime. Dyer et al. v. Wittler, 89 Mo. 81; Hall v. French, 165 Mo. 440-448; Tiedeman on Real Property (3 Ed.), sec. 53, p. 62. (2) U. S. Land Office records are public records which give notice to the world of their contents; and patents of lands from the United States do not come within the purview of the recording laws of the States, and are not required to be recorded unless there is a specific statute requir-

ing their recordation. The chapter on "Conveyances of Real Estate" (Chapt. 30, Vol. 1, page 994, R. S. Mo. 1909), does not require the recording of patents; the chapter on "Recorders of Deeds" (Vol. 3, R. S. Mo. 1909), merely permits the recordation of patents. Secs. 2787-2809, R. S. 1909, vol. 1; Secs. 10390-10391, R. S. 1909. Webb on Record of Titles, sec. 25, page 59; A. & E. Ency. of Law (2 Ed.), vol. 24, page 86 (par. "g"); Mosher v. Bacon, 229 Mo. 338; Sec. 459, R. S. United States. (3) It is not necessary to the validity of a will that it be recorded upon the deed records in this State, if properly probated in another State. Lewis v. St. Louis, 69 Mo. 595; Bradstreet v. Kinsella, 76 Mo. 63. (4) Tax suits are required by law to be brought against the owners of the land against which taxes are assesed, and are void, and pass no title if not thus prosecuted. This is especially true if the deed records of the county in which the land lies, do not disclose the name of an apparent owner. R. S. 1909, sec. 11498; Williams v. Hudson, 93 Mo. 524; Evarts v. Mining Co., 193 Mo. 433; Zweigart v. Reed, 221 Mo. 33; Adams v. Gossom, 228 Mo. 566; Chamberlain v. Blodgett, 96 Mo. 482. (5) A so-called plat book of entries of lands, not certified by the register of the land office, is wholly inadmissible in evidence to establish the name of an apparent record owner of land. Stewart v. Lead Belt Co., 200 Mo. 281; Wilhite v. Barr, 67 Mo. 284; Payne v. Lott, 90 Mo. 676; Nolan v. Taylor, 131 Mo. 224.

*Lew R. Thomason* for respondents.

(1) The demurrer of the defendants being for a misjoinder of two separate independent causes of action improperly joined, the demurrer was directed against plaintiffs' petition in its entirety and not against any one count thereof; the demurrer being sustained, destroyed the entire pleading, and plaintiffs

having failed to file any amended pleading, the defendants were entitled to judgment upon their motion. Munford v. Keet, 154 Mo. 36; Ritchey v. Ins. Co., 98 Mo. App. 115. (2) Where the statute requires suit for delinquent taxes to be brought against the owner charged, in the absence of other knowledge, the collector has a right to assume that the person in whom the records of the county showed the title to be vested was the true owner and the right person to be sued. Vance v. Corrigan, 78 Mo. 94; Payne v. Lott, 99 Mo. 676; State ex rel. Hunt v. Sack, 79 Mo. 661; Allen v. Ray, 96 Mo. 542; Sinonson v. Dolan, 114 Mo. 176; Nolen v. Taylor, 131 Mo. 224; Hilton v. Smith, 134 Mo. 500; Land & Lumber Co. v. Bippus, 200 Mo. 697. (3) Even though it be conceded that an uncertified plat book is not competent evidence to establish a fee-simple title it does not follow that it is not competent for another purpose, that of tending to impart knowledge of ownership to the collector of revenue. But the title of the defendant George does not rest upon the uncertified plat book. The certificates offered in evidence by defendants, duly certified by the receiver of the United States Land Office, establishes absolutely that the suit for delinquent taxes under which the defendant George claims title was brought against the proper parties, was regular in every particular and passed the title against William B. Dorn and those claiming under him, either in the character of devisees or heirs. Noland v. Taylor, 131 Mo. 224.

STURGIS, J.—This is an action to recover damages for an alleged trespass upon about 400 acres of land in Butler county, Missouri, and cutting and carrying away the timber thereon. The trial in the circuit court concerned the title to this land. The trial court found that the plaintiffs had no title and so instructing the jury the trial resulted in a judgment for defendants and plaintiffs have appealed. The plaintiffs claimed

title as the heirs of William B. Dorn. The land is what
is known as military bounty land. By reason of the
fact that one Philip Cook was a valiant soldier in Cap-
tain Black's company, Georgia Militia, in the Florida
War, he received under the act of Congress of March
3, 1855, in relation to granting bounty land to certain
officers and soldiers engaged in the military service of
the United States, a land warrant for eighty acres of
public land. This land warrant was assigned to Amzi
Rudolph and was by him located on a part of the land
in question. Thereafter, and before his patent was is-
sued, this certificate of location was assigned by Ru-
dolph to Wiliam B. Dorn, who presented. the certifi-
cate of location and assignment to the general land of-
fice and a patent was issued to him for this land under
date of November 1, 1859. This patent was not re-
corded in Butler county, Missouri, until November 20,
1912. Like patents for the other lands were issued to
said Dorn on assignments to him by Rudolph of other
land warrants located on the other lands now in con-
troversy. These patents were all dated in 1859 and none
of them recorded in the local land records until in
1912. The plaintiffs are, as stated, the heirs of Wil-
liam B. Dorn and claim title under him by virtue of
these patents. The defendants' title is based on cer-
tain sheriff's deeds, dated and recorded about the year
1889, under executions issued on judgments for taxes
in certain suits brought against Amzi Rudolph, the
entryman of such lands. These tax suits were brought
long before the patents to Dorn were recorded in the
local land records. The tax deeds in defendants' chain
of title purport to convey the title of Amzi Rudolph.
The material question for us to decide is as to the
validity of defendants' title derived under these tax
suits. It is conceded by both sides that at the times
the taxes were levied, the suits thereon brought and the
sales had that there was an uncertified plat book of
entries in the office of the recorder of deeds of said

county showing that Rudolph was the entryman of this land.

I. It must be held that plaintiffs have the legal title to this land unless the same has been lost to them by reason of these tax suits, judgments and deeds, above mentioned. The land is timberland and has been unoccupied during all these years. No question of any Statute of Limitation or title by adverse possession is raised. It is shown that William B. Dorn, patentee of all these lands, died a resident of South Carolina in 1876, leaving a last will which was admitted to probate in that State in 1877. He devised his real estate, including this land, to his wife for life with remainder to his children, these plaintiffs. Some objection is made to the regularity of the probate of this will and the proof of same, but that is immaterial here. If the will is invalid for any reason or not properly probated, these plaintiffs acquired the land by descent. [Graves v. Ewart, 99 Mo. 13, 17, 11 S. W. 971.] The only difference the will makes is that if valid it gave the mother of these plaintiffs a life estate in these lands and cast on her the duty, as life tenant, to pay the taxes and her failure to do so cannot be charged against these plaintiffs, the remaindermen, as laches.

As just stated, the tax suits resulting in the tax deeds under which defendants claim title are against Amzi Rudolph and only his interest in the land was sold. There has never been any tax suit against William B. Dorn or these plaintiffs, his heirs. Their interest in this land has never been sold. They have never had their day in court. How then have they lost and defendants acquired their legal title? The statute in force at the time the tax suits were brought, section 9303, Revised Statutes 1899, provides that such suits should be brought in the name of the State, at the relation of the collector, "and against the *owner* of the property." This statute has been amended and is

now section 11498, Revised Statutes 1909. The amendment relates to bringing suits against the last record owner and whether it accomplishes more than was already accomplished by the courts in construing the section before the amendment we need not now inquire. It had already been held by a line of decisions, beginning with Vance v. Corrigan, 78 Mo. 94, that in a suit for taxes brought against the last record owner resulting in a sale to an innocent purchaser without notice, actual or constructive, of another's claim of title, the tax sale would be valid and convey a good title although the party sued in the tax proceeding had parted with his title by an unrecorded deed. These decisions are based on the rule that the real owner having a title deed must put it of record in order to make the same valid as against subsequent purchasers in good faith. [Wilcox v. Phillips, 260 Mo. 664, 169 S. W. 55, 59.] This rule obviously does not apply to one whose title is not evidenced by any written instrument, as in case of title by descent, and so it is held that a suit against the deceased ancestor does not affect the title of the heirs though such ancestor was the last record owner. [Perkinson v. Meredith, 158 Mo. 457, 462, 59 S. W. 1099; Adams v. Gossom, 228 Mo. 566, 580, 129 S. W. 16; Gage v. Cantwell, 191 Mo. 698, 91 S. W. 119.] Logically this would apply to one whose title is based on adverse possession under the Statute of Limitations and such title would not be divested by a tax proceeding against the last record owner. See on this point, Adams v. Gossom, 228 Mo. 566, 581, 129 S. W. 16. So too it must apply to one whose title is based on an instrument not necessary to be recorded in the local land records.

It follows from this that unless the plaintiffs or their ancestor, Dorn, were derelict in their duty in failing to file for record in Butler county, Missouri, where this land is situate, the muniments of their title, to-

wit, the United States patents to this land, then the exception to the rule that tax suits must be against the owner of the land based on the last record owner doctrine has no application here.

The patents in question, based on an assignment of the certificate of location from the entryman to the patentee as recited in the patent, made the patentee, Dorn, the first owner of the·fee simple title and de prived the entryman, Rudolph, of any equitable title he had in the land. Had this patent been recorded in Butler county, Missouri, then unquestionably the tax suits to have had any affect on Dorn's title must have been against him both as the true and last record owner unless the same were brought against these plaintiffs, his heirs, after his death. This would have been true even under the decisions invoked by defendants, to the effect that, in ascertaining the last record owner for the purpose of bringing suit for delinquent taxes, the tax collector may look to the duly certified plat book, obtained by the county court from the United States land office as provided by section 11363, Revised Statutes 1909, and a suit resulting in ·a sale of the land to an innocent purchaser is good when brought against the entryman shown by such plat book to be the last record owner as against one claiming under an unrecorded deed from such entryman. [Payne v. Lott, 90 Mo. 676, 681, 3 S. W. 402.] Nolan v. Taylor, 131 Mo. 224, 228, 32 S. W. 1144, was decided on the authority of Payne v. Lott, supra, though the unrecorded instrument in that case was a patent and that case might be binding here if it was the last decision of the Supreme Court on this point.

We find, however, that, under the last decision of the Supreme Court, Wilcox v. Phillips, 169 S. W. 55, it is held that a United States patent to land is not such an instrument as is required to be recorded in the local land records for any purpose and is not such an instrument as is void as to subsequent purchasers in

good faith unless so recorded. The basis of this hold-
ing is the decision of the United States Supreme Court
in United States v. Schurz, 102 U. S. 378, 26 L. Ed.
167, where it is said: "The Acts of Congress provide
for the record of all patents for land in an office, and in
books kept for that purpose. An officer, called the Re-
corder, is appointed by law to make and to keep these
records. This officer is required to record every patent
before it is issued, and to countersign the instrument
to be delivered to the grantee. This, then, is the final
record of the transaction, the legally appointed act
which completes what Sir William Blackstone calls
title by record; and when this is done, the grantee is
invested with that title." This quotation became part
of the text of 2 Jones, Real Property, sec. 1377, and
that author adds, in section 1378: "The statutes in
regard to recording do not apply to conveyances by a
State. Such conveyances may be recorded, and gen-
erally are, but their effect as vesting title and *afford-
ing notice* is not dependent upon their being recorded."
This was quoted with approval in Mosher v. Bacon, 229
Mo. 338, 358, 129 S. W. 680, and the principle was ap-
plied to patents issued by this State in the case of sale
of swamp lands by the various county courts. Wilcox
v. Phillips, supra, involves a tax sale and deed there-
under in a suit against the entryman as shown by the
certified plat book and the tax sale and deed, as here,
were attacked by the heirs of the patentee whose pat-
ent was unrecorded at the time of the tax suit. The
case, therefore, is decisive of this one. The court there
said: "In the first place, it would seem that to pass
title or *impart notice* neither a patent from the United
States nor a patent from the State itself needs record
in the county in which the land is situate. . . .
The statutes of the State of Missouri, recognizing the
fact that patents emanate from the general government
and evidence acts of that government as overlord, do
not require, as a condition precedent to vesting title

or *imparting notice,* that such patents be recorded in the county in which the land is situate. It would be uncommonly revolutionary and singular if they assumed such a hostile and unconstitutional attitude. To the contrary, our statutes are merely permissive and use the phrase 'may be recorded.' [R. S. 1909, sec. 10390.] Conveyances that *must* be recorded are mentioned in another section. [Id. sec. 10381.] Why should taxing officers and tax purchasers not be charged with notice of United States grants by way of patents duly recorded, where the law under which they are made requires a record?" The record here referred to is that of the General Land Office at Washington, D. C.

. This holding is in accord with the decisions elsewhere. In Evitts v. Roth, 61 Texas, 81, 86, the court said: "A patent is notice to the world; the record of it is in the general land office." In Sands v. Davis, 40 Mich. 14, 18, this language is used: "The record of the patent in the proper office in Washington is declared by law to be of the same force as the patent itself. [See McGarrahan v. Mining Co., 96 U. S. 316.] While our recording laws allow and encourage the record of patents in our county registries, the failure so to record them cannot operate to injuriously affect their validity or operation." [See also, David v. Rickabaugh, 32 Ia. 540; Sayward v. Thompson, (Wash) 40 Pac. 379; Patterson v. Langston, (Miss.) 11 So. 932; Webster v. Clear, 49 Ohio St. 392, 31 N. E. 744; 32 Cyc. 1031; 24 Am. & Eng. Ency. of Law (2 Ed.), 86.]

II. There is another view of this case equally fatal to defendants' title. In all the cases in which it has been held that the collector in bringing tax suits could resort to the plat book of entries obtained from the land office by the county court, such plat book was one duly certified by the proper officer and admissible in evidence. It is conceded that when the tax suits in question were

brought by the collector, the so-called plat book from which he ascertained, if he did, that Amzi Rudolph was the last record owner of this land was not certified or authenticated in any manner. It was found in the custody of the recorder of deeds, who produced and identified it by testifying that it was in that office when he came into office seven years previous and had so remained there. This plat book was not, therefore, even in the custody of the proper officer, as the one contemplated by statute to be procured by the county court is to be kept in the custody of the county clerk. [Section 11363 et seq., R. S. 1909; Payne v. Lott, 90 Mo. 676, 681, 3 S. W. 402.] It is said in this case, as the basis for treating this plat book as a record showing the last record owner of land, "that such a plat book so certified and on file in the county clerk's office was receivable in an ejectment suit to show title in plaintiff. If receivable in evidence for the purpose of establishing ownership, we are unable to perceive why a collector, charged with the duty of suing the owner of land for delinquent taxes thereon, may not resort to such plat book as well as to the registry of deeds for the purpose of ascertaining who is the apparent owner of such land." Unless duly certified, such plat book could not be received in evidence as showing title to land or for any purpose. How is the court to know that the collector did resort to the proper plat book to ascertain who was the last record owner unless the same can be put in evidence? This uncertified plat book was offered in evidence for that very purpose and the court received it. This was error. [Stewart v. Lead Bolt Land Co., 200 Mo. 281, 290, 98 S. W. 767.] We do not see how the trial court is to know or did know that the plat book offered here was the one procured by the county court from the United States land office under section 11363, supra, unless the same was in some manner certified by the

proper officer of such land office. Unless it was such a record the collector had no right to resort to it to ascertain the last record owner. That it was shown by a certificate from the land office, procured for the purpose of this trial, that the uncertified plat book correctly showed the name of the entryman of this particular land cannot by retroaction cure this defect and make it a record when it was not such at the time the collector used it. If so, then any information which the collector might have acted on in the total absence of any plat book would be sufficient, provided it could be shown that a duly certified plat book would have showed the same entryman.

III. Something is said in the briefs and arguments about the injustice of permitting those who have not paid taxes on land for forty years or more to recover in this action. The legal title to land, however, is not lost in that way. In the recent case of Chilton v. Nickey, 261 Mo. 232, 169 S. W. 978, the Supreme Court permitted the heir of the patentee of land to recover the same, although it was shown that the taxes had not been paid by his father or his heirs since 1875, a period about equal in duration to that shown in this case. In that case the court said: ''Appellant insists that the plaintiff is barred by laches. The doctrine of laches is only applied to defeat a claim for some equitable relief. It is no bar to a claim made under a legal title. It was expressly so held in Hayes v. Schall, 229 Mo. l. c. 124, 129 S. W. 222. In no case in this State has it been held that laches is a bar to a claim made under a legal right as distinguished from an equitable claim or title.''

For the errors herein noted in not sustaining plaintiffs' title to this land, the case will be reversed and remanded.

*Robertson, P. J.,* and *Farrington, J.,* concur.